ROBERT D. DAVIS & another *vs.* FRANK O. WELLS.

Franklin. September 16, 1925. — November 30, 1925.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & SANDERSON, JJ.

*Guaranty. Contract,* Under seal, Construction, Performance and breach, Alteration.

A salesman made with a corporation an agreement in writing under which the corporation agreed, among other things, to supply the salesman with sufficient samples, stocks of merchandise and catalogues, and the salesman agreed in clause 1 of section 2 of the contract to obtain accepted business in a defined territory to the amount of $20,000 in twelve months, and deposited $1,000 with the company to be retained as liquidated damages in case of his failure to do so. One, who was the president and a director and active in the management and familiar with the business of the corporation, executed a bond in which he guaranteed payment of the $1,000 deposited by the salesman should the salesman "comply with all the requirements in clause 1, section 2 of said agreement, and all other stipulations of said agreement." *Held*,

that the words of the bond, properly construed, meant that, if the plaintiff secured orders to the amount of $20,000, or, being ready, willing and able to perform this part of the contract, was prevented from doing so by the company, the "requirements" are complied with.

Where, at the trial of an action by the salesman against the guarantor upon the bond above described, the jury found on evidence warranting the finding that the corporation failed "to perform its contract in such a way as to prevent the plaintiff's fulfilling his contract according to its terms," a further finding for the plaintiff was warranted.

A further provision of the contract between the plaintiff and the corporation above described was that the salesman should secure stocks consigned to him by furnishing the corporation with a surety or other acceptable bond in the amount of $1,000. There was evidence that no goods were consigned to the plaintiff, and that the manager of the company had told the plaintiff, in substance, that the matter of giving a bond could be allowed to go until such time as stock was shipped on consignment, which time, it could have been found, never arrived. *Held,* that

(1) Such evidence warranted a finding by the jury that the parties modified the contract so far as it related to the giving of a surety bond;

(2) In view of the defendant's intimate knowledge of the business of the corporation and his participation therein, it could have been found that he knew of the modification of the contract and assented to it;

(3) The plaintiff's failure to procure the bond above described did not as a matter of law bar recovery on the defendant's bond.

At the trial above described, it appeared that additional territory was added by the parties for the plaintiff's activities after the defendant had signed his bond, and the defendant contended that there had been a material alteration of the original agreement which he was guaranteeing and that he thereby was discharged as a guarantor. Under appropriate instructions, the judge submitted to the jury a special question as to whether the plaintiff and the company without the defendant's knowledge and consent materially altered the terms of the contract by enlarging the territory in which the plaintiff was to operate; and further instructed them, in substance, that, if the agreement giving the additional territory was not made a part of the original contract, but was made independently of it, it was immaterial; but that, if it resulted in a material change in the agreement as originally made, the defendant was released from liability unless he had knowledge of it and consented thereto. The jury in answer to a question found that the agreement giving the plaintiff additional territory was not made a part of the original contract. *Held,* that it could not be said that the jury's finding was unwarranted: the plaintiff therefore was not precluded from recovery.

CONTRACT upon the bond described in the opinion. Writ dated August 8, 1922.

In the Superior Court, the action was tried before *Whiting,* J. Material evidence, special questions submitted to the jury and their answers thereto are described in the

opinion.    At the close of the evidence, the defendant asked for the following rulings, among others:

"1. Upon all the evidence the plaintiffs are not entitled to recover.

"2. Upon all the evidence the plaintiffs have failed to comply with section 2, clause 1, of their contract with the Wells-Holmes Company, Inc., in that they have not sold $20,000 worth of goods within the time specified in the con-tract, that requirement is a condition precedent to their recovery against the defendant in this case and the verdict should be for the defendant.

"3. Upon all the evidence there has been a material altera-tion in the original contract between the plaintiffs and the Wells-Holmes Company without the knowledge or consent of the defendant Wells, and therefore the plaintiffs are not entitled to recover.

"4. Upon all the evidence, there being no seal on the bond signed by the defendant, there is no evidence of any considera-tion for the bond, and the plaintiff cannot recover.

"5. Upon all the evidence the plaintiffs failed to comply with section 2, clause 2, of their contract with the Wells-Holmes Company, namely, 'To secure the stock consigned to you by furnishing us with a surety bond or other acceptable bond in the sum of $1000;' and this failure was not known by or consented to by the defendant and therefore excuses the defendant from his obligation upon the bond, and the plain-tiffs cannot recover."

"8. If the plaintiffs and Wells-Holmes Company after the execution of the bond, and without the knowledge and con-sent of the defendant Wells, agreed to include under the contract in the territory of the plaintiffs the remainder of the state of Connecticut, or a portion of New York State, it is a material alteration of the contract for which the de-fendant is surety, and he is not liable to the plaintiff."

"11. If the jury find upon all the evidence that the plain-tiffs failed to furnish a bond or security in compliance with clause two of section two of the contract of the plaintiffs with the Wells-Holmes Company, then the defendant F. O. Wells was released from liability upon his bond at the time of the failure so to do."

The requests were refused.  There was a verdict for the plaintiffs in the sum of $1,058.  The defendant alleged exceptions.

The case was submitted on briefs.

*T. R. Hickey,* for the defendant.

*F. J. Lawler,* for the plaintiffs.

CROSBY, J.    This is an action of contract upon a written instrument in which the defendant guaranteed, upon certain conditions, the payment of $1,000 by the Wells-Holmes Company to the plaintiff.  The plaintiff is described in the writ as a corporation, but by amendment the names of Robert D. Davis and Edgar B. [P.] Hill, copartners doing business under the firm name of Davis-Hill Company, were substituted as parties plaintiff.

The Wells-Holmes Company, a corporation which acted as selling agent for several manufacturers of taps, dies, tools and similar articles, entered into a contract in writing with the plaintiffs under which the plaintiffs were to represent these several manufacturers in the sale of their products in a certain territory in the southwestern part of the State of Connecticut, particularly described in the agreement.  The agreement recited that the plaintiffs agreed among other things: " 1.  To deposit with us the sum of one thousand dollars in consideration of the business now established in the territory as listed; said $1000. to be returned to you without interest when your total sales have amounted to $20,000.  However, should you fail to secure accepted business in this amount within 12 months from date of this agreement, you agree that said $1000 shall belong to us as liquidated damages, it being impossible to otherwise determine the amount of damages which we would suffer should you fail to perform.  2. To secure the stocks consigned to you by furnishing us with a surety or other acceptable bond in the amount of $1000."    And the Wells-Holmes Company agreed, in part: " 1.  To supply you with samples and such stocks of merchandise as in our judgment will be necessary to the proper conduct of a general distribution point.   2. To make payment of commissions the tenth of the month following shipment of merchandise, or acceptance of your order.   3. To

supply you with catalogues, instructions, past customers and enquiries.   4. To give you full credit for sales accepted from prospects called upon, whether going to the factory or to any other source for the period of thirty days following notification of said call to our office in New York. . . .   7. To inform you at least fifteen days in advance of any change in the net list prices."   By its terms the contract was to be in ·force for a period of one year from June 11, 1921.

The guaranty on which the plaintiffs seek to recover from the defendant is as follows:

"BOND.

. "KNOW ALL MEN BY THESE PRESENTS, THAT I, Frank O. Wells, of Greenfield, Mass., do hereby guarantee payment of ($1,000) One Thousand Dollars deposited with the Wells-Holmes Company as possible liquidated damages under the contract attached hereto to Davis-Hill Company should said Davis-Hill Co. comply with all the requirements in clause (1) one, section (2) two of said agreement, and all other stipulations of said agreement.

"However, should said Davis-Hill Co. fail to comply with each and every requirement in said contract, said Frank O. Wells shall be released from any and all obligations under this bond.

Frank O. Wells          (seal)

Accepted June 11, 1921.

Wells-Holmes Co., Inc.

G. E. H. (seal)"

The plaintiff Hill testified that after the guaranty was executed, the agreement between the plaintiffs and Wells-Holmes Company was signed and the plaintiffs worked under it from its date to February 24, 1922, when they wrote a letter to "Mr. Frank O. Wells, Wells-Holmes Company," in which they stated in substance that as the company had not fulfilled its part of the contract they gave notice of its cancellation; and they demanded payment of the $1,000 secured by the guaranty.   At the trial they offered evidence upon which they contended that the provisions of paragraphs 1, 2, 3, 4, and 7 of the part of the contract to be performed by the Wells-Holmes Company had not been complied with, and they therefore cancelled the contract.

The defendant contended and offered evidence to show (1) that the plaintiffs had failed to comply with section two of clause one of the sales agreement, in that they had not sold $20,000 worth of goods within the time specified; (2) that they had failed to secure stocks consigned to them by furnishing the company with a bond in the sum of $1,000 in accordance with clause two. The defendant also contended that he was released from liability because there had been a material alteration in the contract by the parties thereto, by enlarging the territory in which the plaintiffs were to represent the various companies in the sale of their products without his knowledge or consent.

1. The defendant's fourth request that "Upon all the evidence, there being no seal on the bond signed by the defendant, there is no evidence of any consideration for the bond, and the plaintiff cannot recover" was rightly denied. It appears from the copy of the bond printed in the record that it bore a seal, and there was no evidence to the contrary. In the absence of a seal, if, as the jury could have found, it was signed before or at the time the original contract was signed, and as a part of that transaction, there was a sufficient consideration, and the judge in effect so instructed the jury. The only reasonable inference from the evidence is that the guaranty in fact was executed in consideration of the plaintiffs signing the sales agreement. *Lennox* v. *Murphy,* 171 Mass. 370, 371. *Graham* v. *Middleby,* 185 Mass. 349, 355. There is nothing in *Russell* v. *Annable,* 109 Mass. 72, at variance with the conclusion here reached.

2. The plaintiffs contend that they were justified in cancelling their contract with the Wells-Holmes Company because, among other grounds, the company failed (1) to supply them with samples of goods to be sold and such stocks of merchandise as was necessary for the proper conduct of the business under the contract; (2) to supply them with catalogues in sufficient numbers and with "instructions, past customers and enquiries"; (3) to give them full credit for sales accepted from prospects called upon, whether going to the factory or to any other source for the period of thirty days following notification of call to the company's New

York office; and (4) to inform them at least fifteen days in advance of any change in the net list of prices. Without discussing in detail all the grounds on which the plaintiffs rely as a justification for cancelling the contract, there was evidence from which the jury were warranted in finding, in answer to a special question submitted to them, that the company failed to perform its contract in such a way as to prevent the plaintiffs from fulfilling their contract according to its terms. This failure on the part of the company was largely due to its neglect or inability to execute orders that had been taken by the plaintiffs, and to its failure to furnish them with catalogues of the various manufacturers whose goods the plaintiffs agreed to sell. For the same reasons, the jury were justified in finding that the plaintiffs' non-compliance with section two, clause one of the contract, in which they agreed to sell $20,000 worth of goods within the time specified, was the result of the company's not performing its contract.

3. As the failure of the company to supply the plaintiffs with sufficient samples, stocks of merchandise and catalogues could have been found to have been a substantial breach of the contract which entitled the plaintiffs to cancel it, we need not consider whether there was evidence upon which it could have been found that the contract was violated by the company in other particulars. While it is plain that it could have been found that the plaintiffs were prevented from performing their part of the contract by reason of a violation of its terms by the company, the question remains whether the defendant can be charged with liability on his guaranty.

4. It is conceded by the plaintiffs that they did not secure business to the amount of $20,000; they contend, however, that their failure was due to the failure of Wells-Holmes Company to perform material parts of the contract. Upon the special findings of the jury it is manifest that the company committed a breach of the contract. It could have been found that the plaintiffs were justified in terminating the contract in accordance with its terms.

5. The defendant guaranteed the payment of the $1,000

deposited with the company "should said Davis-Hill Co. comply with all the requirements in clause (1) one, section (2) two of said agreement, and all other stipulations of said agreement." The guaranty is to be construed strictly, and the defendant is entitled to rely upon its precise terms; to charge him with liability thereon the plaintiffs must prove that its conditions have been fully complied with. *Grocers' Bank* v. *Kingman*, 16 Gray, 473. *Warren* v. *Lyons*, 152 Mass. 310, 312. *Lascelles* v. *Clark*, 204 Mass. 362, 373. *Schwartz* v. *American Surety Co. of New York*, 231 Mass. 490. *Zeo* v. *Loomis*, 246 Mass. 366.

6. The charge of the judge allowed the jury to find in favor of the plaintiffs on the guaranty if the Wells-Holmes Company failed to perform material portions of its contract, and such failure prevented the plaintiffs performing their contract. Certain special questions were submitted to the jury; the only ones material at this time are (1) "Did the Wells-Holmes Company, Inc. fail to perform its contract in such a way as to prevent the plaintiff's fulfilling their contract according to its terms?" (2) " Did the plaintiffs and defendants modify the contract of guaranty so as to do away with the necessity of giving a surety bond to the Wells-Holmes Company, Inc., as provided in paragraph two of the provisions to be performed by the plaintiffs?" and (3) "Was the agreement of December, 1921, giving the plaintiffs additional territory made a part of the contract of June 11?"

7. The defendant, at the time the sales agreement and guaranty were entered into and thereafter at least until the plaintiffs terminated the contract, was the president and a director of the Wells-Holmes Company. The correspondence shows that he was active during this entire period in the management of its affairs and familiar with its business; that before the contract had been terminated the office of the company was moved from New York to Greenfield where the defendant lived; that thereafter the business was directed from the defendant's private office, where all the books of the company were kept. There was evidence that by letters and personal interviews with the defendant, the plaintiffs repeatedly complained that the company was not conforming to the terms of the contract; that in response to a letter

written by the plaintiffs, the defendant wrote on February 17, 1922, stating in substance that he was going to carry on the business until it was on its feet and in better shape than it had been, and urged the plaintiffs "to stick to it" a little longer.

The sales agreement and the guaranty having been made contemporaneously should be construed together. Under the agreement the plaintiffs were to obtain accepted business to the amount of $20,000 in twelve months, and deposited $1,000 as liquidated damages in case of their failure to do so. By the terms of the guaranty the defendant agreed to pay the $1,000 "should said Davis-Hill Co. comply with all the requirements in clause (1) one, section (2) two of said agreement, and all other stipulations of said agreement." These words, properly construed, mean that if the plaintiffs secured orders to the amount of $20,000, or, being ready, willing and able to perform this part of the contract are prevented from doing so by the company, the "requirements" are complied with. In other words, if the plaintiffs were entitled to cancel the contract, and recover back from the company the deposit because of its failure to perform the agreement, and if the company on demand has failed to pay the plaintiffs, the defendant under his guaranty agreed to do so. The jury in substance were so instructed, and were warranted in finding that no breach of the contract had been committed by the plaintiffs, and that the defendant was liable. It follows that the defendant's second request could not properly have been given.

The defendant testified on cross-examination, subject to his exception, that he had signed "other guaranties in contracts besides this." This evidence was irrelevant and should have been excluded, but we believe its admission did not injuriously affect the substantial rights of the defendant. G. L. c. 231, § 132.

8. Under clause 2 of the sales contract, to be performed by the plaintiffs, they agreed to secure stocks consigned to them by furnishing the company with a surety or other acceptable bond in the amount of $1,000. There was evidence that no goods were consigned to the plaintiffs, and that one

Holmes, manager of the company, had told one of the plaintiffs, in substance, that the matter of giving a bond could be allowed to go until such time as stock was shipped on consignment, which time, it could have been found, never arrived.   Upon this evidence a special finding of the jury that the parties modified the contract so far as it related to the giving of a surety bond was not unwarranted.   In view of the evidence of the intimate knowledge which the defendant had respecting the affairs of the company, and his participation therein, and all the other evidence, it could have been found that he knew of the modification and assented to it.   It follows that the defendant's fifth and eleventh requests were rightly denied.

9. The judge under appropriate instructions also submitted to the jury a special question as to whether the plaintiffs and the company materially altered the terms of the contract by enlarging the territory in which the plaintiffs were to represent the various companies without the defendant's knowledge and consent.   He told them in substance that if the agreement giving the plaintiff the additional territory was not made a part of the original contract, but was made independently of it, it was immaterial; but if it resulted in a material change in the agreement as originally made, that the defendant was released from liability unless he had knowledge of it and consented thereto.   The jury in answer to the question found that the agreement giving the plaintiffs additional territory was not made a part of the original contract.   We cannot say the finding was without evidence to support it.   Accordingly the defendant's third and eighth requests were rightly denied.

It is manifest from what has been said that a verdict could not properly have been directed for the defendant; nor could it have been ruled in accordance with the defendant's first request that the plaintiffs were not entitled to recover.   The case was submitted to the jury with proper instructions. We have examined the exceptions to the admission and exclusion of evidence; they need not be considered in detail; it is enough to say that we find no reversible error.

*Exceptions overruled.*

*Judgment for the plaintiffs on the verdict.*